# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**LORENZO QUENTON SHEAD**                                                         **PLAINTIFF**

**V.**                                   **CIVIL ACTION NO.: 4:19CV20-DAS**

**WASHINGTON COUNTY**
**CORRECTIONAL FACILITY, ET AL.**                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

On May 16, 2019, plaintiff Lorenzo Quenton Shead, an inmate currently confined at the Issaquena County Correctional Facility, appeared before the undersigned for a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to determine whether there exists a justiciable basis for his claim filed under 42 U.S.C. § 1983. A plaintiff's claim will be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998) (citations omitted). The Prison Litigation Reform Act[1] applies to this case because the plaintiff was incarcerated when he filed this lawsuit. Plaintiff having consented to U.S. Magistrate Judge jurisdiction in this case in accordance with 28 U.S.C. § 636(c), the undersigned has the authority to enter this order and the accompanying judgment.

### I. Plaintiff's Allegations

In early August 2016, Shead was housed as a pretrial detainee in a one-man cell in medical lockdown at the Washington County Correctional Facility ("WCCF"). Over Shead's objections, WCCF staff put a man named Johnny Stephang and another man with the last name

---

[1] 28 U.S.C. § 1915.

of Murphey in the one-man cell with Shead. During the night, Murphey and Johnny were yelling at other inmates and woke Shead, who complained. A fight ensued, and Johnny hit Shead in the face with a screw, thereby breaking his nose. Murphey began beating on the door and yelling for help, as there was no microphone button in the cell to use to call for help. Shead claims that approximately one hour later, officers arrived. Shead was "patched up" on site and then transported to Delta Regional for additional treatment.

Once Shead returned from the hospital, he was locked in a one-man cell for about two to three weeks. While there, he states, he was denied showers and was forced to sleep on the floor, because there was no rack in the cell. According to Shead, the cell was so dirty that he caught scabies. He maintains that he was finally moved to another cell when his parents saw his skin and complained.

Thereafter, Shead was put in another cell. The toilet flooded in that cell, and he was put into handcuffs to be moved to another cell. The officer moving him put his knee in Shead's back and pulled up on Shead's arms, which hurt Shead's back.

Months later, Shead was moved to male lockdown, where Johnny Shephang was later moved, too, despite the earlier altercation between the two. According to Shead, Johnny again attacked Shead while officers witnessed the assault. Aggrieved, Shead filed the instant lawsuit against the Washington County Correctional Facility, Mrs. Chapman, Lt. Anderson, and Warden Payne, alleging that Defendants failed to protect him, denied him medical care, subjected him to excessive force, and subjected him to unconstitutional conditions of confinement.

## II.     Discussion

### A.     Washington County Correctional Facility

As an initial matter, Washington County Correctional Facility must be dismissed, as it is not a proper defendant in an action filed under 42 U.S.C. § 1983. Whether an entity may be sued

is determined by reference to the law of the state in which the district court sits. Fed. R. Civ. P. 17(b). In Mississippi, sheriff's departments, jails, and prisons have no legal existence apart from the county in which they are located. *See Brown v. Thompson*, 927 So. 2d 733, 737 (Miss. 2006); *Campbell v. Thompson*, No. 3:15CV395-DPJ-FKB, 2015 WL 5772535, at *2 (S.D. Miss. Sept. 3, 2015). Accordingly, the Washington County Correctional Facility is not an entity amenable to suit and must be dismissed.

B.  **Denial of Medical Care**

Shead can demonstrate that he has been denied adequate medical care for his broken nose only if he can demonstrate that prison officials acted with deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) ("The Court has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care."). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a state actor is not liable under § 1983 unless the plaintiff alleges facts which, if true, would demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. Accordingly, negligent conduct on the part of jail personnel will not support a constitutional claim for the denial of medical care. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Rather, deliberate indifference requires the inmate to produce evidence that jail officials engaged in conduct that "clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotations omitted).

Shead testified that when officers arrived at his cell following his altercation with Johnny, a nurse cleaned him up, and he was taken to Delta Regional for treatment. An x-ray confirmed that his nose was broken. He was thereafter taken to see a bone specialist some three to four weeks

later, and the bone specialist allegedly informed Shead that his bones had already started healing out of alignment. According to Shead, the bone specialist stated that Shead's nose would have to be broken and reset if he wanted it to it be aligned correctly. Shead states that he asked Defendant Nurse Chapman for the surgery, but that he has yet to receive it.

The Court finds that the facts as stated by Shead are insufficient to establish that Defendant Chapman, or any other named Defendant, acted with deliberate indifference to Shead's medical needs. When his injury was discovered, he was treated on site and transported to an outside hospital for further treatment. Shead provided the court with no indication that Defendant Chapman deliberately delayed his initial treatment, or that the delay in his appointment with a specialist was the result of any deliberate indifference on her part. Moreover, even if the court were to assume that Defendant Chapman has failed to convey Shead's request for surgery to prison officials, Shead did not identify any risk of serious harm to him that will occur if his nose is left unattended and not properly aligned. Accordingly, Shead's denial of medical care should be dismissed against all defendants, and Defendant Chapman should be dismissed from this action.

### C. Excessive Force

In his complaint and at his *Spears* hearing, Shead alleged that an officer injured Shead's back by putting his knee in it and pulling up on Shead's arms while attempting to handcuff him. However, none of the named Defendants appear to have been involved in this incident, and this claim should be dismissed.

### D. Remaining Claims & Defendants

The court finds that Shead has sufficiently alleged that Defendants Anderson and Payne failed to protect him from known harm and subjected him to unconstitutional conditions of confinement. Accordingly, process will issue against Defendants Anderson and Payne for Shead's failure to protect and conditions of confinement claims.

### III.     Conclusion

For the reasons as set forth above, it is **ORDERED**:

1. That the claims against the Washington County Correctional Facility and Mrs. Chapman be dismissed with prejudice;

2. That Shead's excessive force claim and denial of medical care claim be dismissed;

3. That process issue against Lt. Anderson and Warden Payne as to Shead's claims of failure to protect and unconstitutional conditions of confinement.

**THIS** the 17th day of May, 2019.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE